IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

No. 4:18-CV-153-RJ

CARRIE BETH KELLY,

             Plaintiff/Claimant,

v.

                                        ORDER

ANDREW SAUL,
Commissioner of Social Security,

             Defendant.

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, -25] pursuant to Fed. R. Civ. P. 12(c). Claimant Carrie Beth Kelly ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

**I. STATEMENT OF THE CASE**

Claimant protectively filed an application for a period of disability and DIB on November 26, 2014, alleging disability beginning September 1, 2013. (R. 14, 200–01). Her claim was denied initially and upon reconsideration. (R. 14, 87–119). A hearing before the Administrative Law Judge ("ALJ") was held on May 8, 2017, at which Claimant, represented by counsel, and a vocational expert ("VE") appeared and testified. (R. 14, 36–86). On July 21, 2017, the ALJ issued

a decision denying Claimant's request for benefits. (R. 11–34). On July 9, 2018, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

2

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors: (1) the ALJ improperly cut short Claimant's representative's cross-examination of the vocational expert ("VE"), and (2) the ALJ did not adequately address Claimant's post-hearing written objections and rebuttal evidence. Pl.'s Mem. [DE-20] at 5–15.

3

# IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since September 1, 2013, the alleged onset date. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: disorders of the spine and right knee; bipolar; borderline personality disorder; obsessive-compulsive disorder ("OCD"); and affective mood disorders. *Id.* The ALJ also found Claimant had nonsevere impairments of nontoxic thyroid nodules. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in moderate limitations in understanding, remembering, or applying information and interacting with others and mild limitations in concentrating, persisting, or maintaining pace and adapting or managing herself. (R. 18–19).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform sedentary work[1] with the following limitations:

> [T]he claimant would need to sit and stand every thirty minutes as needed. The claimant can occasionally stoop, balance, kneel, crouch and crawl. The claimant must avoid concentrated exposure to cold, heat, wetness and humidity. The claimant can occasionally push and pull with the bilateral upper extremities. The claimant must avoid concentrated exposure to fumes, odors, dust and gas. The claimant must avoid all exposure to unprotected heights, dangerous machinery and

---

[1] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a); S.S.R. 96-9p, 1996 WL 374185, at *3 (July 2, 1996). "Occasionally" generally totals no more than about 2 hours of an 8-hour workday. "Sitting" generally totals about 6 hours of an 8-hour workday. S.S.R. 96-9p, 1996 WL 374185, at *3. A full range of sedentary work includes all or substantially all of the approximately 200 unskilled sedentary occupations administratively noticed in 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1. *Id.*

uneven surfaces. The claimant will experience no more than one to two absences per month. The claimant must have no more than simple, short instructions and simple work-related decisions with few work place changes for unskilled work. The claimant is limited to only simple, work-related decisions with few work place changes for low stress work. The claimant can occasionally interact with the general public, supervisors and coworkers. The claimant is unable to work in close proximity to others due to distractibility and concentration.

(R. 19–28). In making this assessment, the ALJ found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms not entirely consistent with the medical and other evidence. (R. 21).

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a cashier, restaurant manager, or inspector. (R. 29). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined Claimant is capable of adjusting to the demands of other employment opportunities that exist in significant numbers in the national economy. (R. 29–30).

## V. DISCUSSION

### A.    There was no error in the administrative hearing.

Claimant contends the ALJ improperly prevented her representative from conducting a full cross-examination of the VE. Pl.'s Mem. [DE-20] at 6–11. The court disagrees.

A claimant has a right to procedural due process at a hearing before an ALJ. *Richardson v. Perales*, 402 U.S. 389, 401–02 (1971). That right includes the opportunity to cross-examine witnesses. *Townley v. Heckler*, 748 F.2d 109, 114 (2d Cir. 1984); *see also* 5 U.S.C. § 556 ("A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts."). "The right of cross-examination, however, is not absolute, and reasonable limits may be placed on cross-examination based on factors such as relevance." *Silva v. Berryhill*, 263

5

F. Supp. 3d 342, 348 (D. Mass. 2017); *see also Biestek v. Berryhill*, – U.S. –, 139 S. Ct. 1148, 1156 (2019) (holding that when a claimant is unable to extensively cross-examine a VE, "an ALJ and reviewing court may properly consider obstacles to [cross-examination] when deciding how much to credit an expert's opinion," but ultimately, "[t]he inquiry . . . is case-by-case."); *Richardson*, 402 U.S. at 400 ("the conduct of the hearing rests generally in the [ALJ's] discretion . . . so long as the procedures are fundamentally fair.").

At the hearing, claimant's representative asked the VE which materials she used, and she responded that she relies on the DOT and the resources on the Department of Labor's Occupational Employment Statistics website. (R. 79–80). Claimant's representative asked whether the VE participated in compiling the information, and she responded that the federal government did. (R. 81). Claimant's representative asked how often the information is updated, and the VE stated it was updated anywhere from a weekly basis to once every ten years. *Id.* Employment data is updated monthly, jobs are updated quarterly, and the census is taken every ten years. *Id.* Claimant's representative asked how often the VE conducts research, and she said that she does so on a quarterly basis. *Id.* At that point, the ALJ said, "I'm going to have to shut you down there." *Id.* He explained, "she's qualified to be here. Her numbers are good. She's been approved by the Commissioner of Social Security. Now, if you want to file an objection in writing to any of her statistical analysis and the numbers that she provides, that's fine." (R. 81–82). Claimant's representative agreed. (R. 82). The ALJ continued, "I'm not going to allow you to continue to run down this road questioning her about the statistical analysis and the numbers and her field studies and things of that nature, okay?" *Id.* Claimant's representative indicated that he understood. *Id.* The ALJ stated, "If you have specific questions you want to ask her with regard to the jobs, specific

acts that the individuals do as far as the jobs are concerned, that's fine." *Id.*[2] The ALJ then asked

Claimant's representative whether he wished to ask the VE anything else, and the representative

said that he did not. (R. 84).

The ALJ did not err because he gave Claimant's attorney the opportunity to cross-examine

the VE as was required for a full and true disclosure of the facts. *See* 5 U.S.C. § 556; *Richardson*,

402 U.S. at 410 ("the statutorily prescribed 'cross-examination as may be required for a full and

true disclosure of the facts' . . . is the standard. It is clear and workable and does not fall short of

procedural due process."). The ALJ limited the representative's questioning regarding the

statistical analysis because, as the ALJ stated, the VE was qualified to testify and she was approved

by the Commissioner. The ALJ thus implied that further questioning on the topic was irrelevant.

*See Silva*, 263 F. Supp. 3d at 348; *Haddock v. Apfel*, 196 F.3d 1084, 1090 (10th Cir. 1999)

("Claimants have a right to cross-examine vocational experts as a part of procedural due process,"

but "we believe the role of cross-examination in disability proceedings should remain limited");

*Jenkins v. Colvin*, No. 5:15-CV-10-FDW, 2016 WL 4373701, at *8 (W.D.N.C. Aug. 12, 2016)

(holding that the ALJ did not err in limiting cross-examination of the VE). Moreover, Claimant

does not indicate what additional information her representative hoped to elicit from the VE, had

he been allowed to pursue his line of questioning, or how she was prejudiced by the limitations

placed on the cross-examination. *See* Pl.'s Mem. [DE-20] at 5–11. The ALJ told the representative

that he could question the VE about specific jobs and acts that individuals can perform, and the

representative declined to ask additional questions. Accordingly, the ALJ gave the representative

---

[2] The ALJ expressed frustration with Andrew Youngman, a non-attorney representative who instructs his attorney employees to pursue lines of questioning regarding the statistical analysis. (R. 82–83). Youngman is the President and C.E.O. of Citizens Disability, the organization that represented Claimant, and he signed the post-hearing objections as Claimant's representative. (R. 288); *see also* Andrew Youngman, Citizens Disability, https://www.citizensdisability.com/team/andrew-youngman.

the opportunity to cross-examine the VE as was required for a full and true disclosure of the facts, and the ALJ did not err.

**B.      The ALJ sufficiently ruled on Claimant's post-hearing objections.**

Eighteen days after the hearing, Claimant submitted a document titled "Post-Hearing Memorandum of Law and Objections to the Vocational Witness' Testimony." (R. 281–88). In Objection I, Claimant contended that the ALJ improperly limited cross-examination of the VE. (R. 282). In Objection II, Claimant contended that the VE was not qualified to give opinions on the numbers of jobs that exist in the local, regional, or national economy. (R. 283). In Objections III and IV, Claimant raised several issues with the DOT's job incidence data collection and analysis. (R. 283–84). In Objection V, Claimant contended that any jobs she could perform only if afforded a sit/stand option cannot be used to deny her benefits because a sit/stand option is a reasonable accommodation under the Americans with Disabilities Act ("ADA"). (R. 284–86). In Objection VI, Claimant contended that the jobs identified by the VE would require more than occasional interaction with coworkers and supervisors because they have a Specific Vocational Preparation ("SVP") level of two. (R. 286–87). In Objection VII, Claimant requested a supplemental hearing. (R. 288).

In his decision, the ALJ wrote, "I find that any objections complained of post-hearing should have been made during the hearing and are therefore inappropriate and therefore they are overruled." (R. 14). Claimant contends that the ALJ's rationale for overruling the post-hearing objections is insufficient because it is inconsistent with the limitations the ALJ placed on Claimant's cross-examination of the VE at the hearing. Pl.'s Mem. [DE-20] at 11–15. The court disagrees.

8

### 1. The ALJ was not required to explain his rationale in overruling Claimant's post-hearing objections.

"The Fourth Circuit has yet to specifically address whether the ALJ must rule on all post-hearing objections, but district courts within this circuit have consistently held that ALJs need not address such objections." *Revere v. Berryhill*, No. 3:17-CV-774-DJN, 2019 WL 99303, at \*4 (E.D. Va. Jan. 3, 2019) (citations omitted); *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 448 (2d Cir. 2012) (holding that even though the ALJ did not mention the claimant's objection, he did not err because "[i]n accepting [the VE's] testimony, the ALJ necessarily rejected Brault's grievances"); *Curtis B. v. Comm'r of Soc. Sec.*, No. C17-1893-BAT, 2018 WL 4735624, at \*5 (W.D. Wash. Oct. 2, 2018) (holding that because substantial evidence supported the ALJ's step five determination, the ALJ did not err even though he failed to discuss the claimant's post-hearing objections). At step five of the sequential evaluation process, the ALJ determined that the VE's testimony was consistent with the DOT; that the VE had identified jobs that the Claimant could perform; and, considering Claimant's age, education, work experience, and RFC, she was capable of adjusting to other work. (R. 30). Substantial evidence supports the ALJ's step five analysis, so he was not required to explain why he overruled Claimant's objections. *See Jenkins v. Colvin*, No. 5:15-CV-10-FDW, 2016 WL 4373701, at \*8 (W.D.N.C. Aug. 12, 2016) ("The asserted error of failing to note the objection of Plaintiff's counsel is of no moment" because the step five analysis was supported by substantial evidence).

### 2. Claimant waived Objections V and VI by failing to raise them at the hearing.

"When objecting to a VE's testimony, a plaintiff must raise the argument during the hearing or risk waiving it." *Revere*, 2019 WL 99303, at \*3 (citations omitted). Claimant argues that she did not waive her objections because the ALJ limited her representative's cross-examination of the

VE. Pl.'s Mem. [DE-20] at 11. However, the ALJ only instructed Claimant's representative to cease questioning the VE about her qualifications and statistics; the ALJ specifically invited the representative to ask about particular jobs and acts that individuals can perform. (R. 82). The representative declined to do so. (R. 84). Claimant's Objections V and VI address the sit/stand option and occasional interaction with coworkers and supervisors, and those topics were available for discussion at the hearing. The representative chose not to make objections at that time. Accordingly, Objections V and VI are waived.

### 3. The ALJ adequately addressed the remaining objections at the hearing.

In Objections II, III, and IV, Claimant contested the VE's qualifications, data collection methodology, and statistical analysis. When Claimant's representative questioned the VE about those topics, the ALJ stated that the VE is "qualified to be here. Her numbers are good. She's been approved by the Commissioner of Social Security." (R. 81).

The ALJ's explanation was sufficient. In *Looney v. Berryhill*, the claimant made similar objections to the VE's qualifications, data sources, and conclusion that the claimant could perform the jobs identified. No. 3:17-CV-450-DJN, 2018 WL 3826778, at *11 (E.D. Va. Aug. 10, 2018). The ALJ overruled the claimant's objections to the VE's qualifications and data sources, stating, "[u]se of vocational expert testimony in regard to job numbers is well settled." *Id.* The court held that the ALJ "adequately addressed" the objections. *Id.* Additionally, the claimant in *Looney* objected to the use of the DOT, arguing that it is outdated. *Id.* at *13. The court held that objections to the DOT "lack merit, because the DOT remains a valid source of job data used by the SSA." *Id.* Likewise, here, the ALJ adequately addressed Claimant's objections because he explained that the VE's qualifications and data sources are valid, and Claimant's objections to the DOT are meritless.

Claimant's remaining two objections did not require further explanation. In Objection I,

10

Claimant contended that the ALJ improperly limited her representative's cross-examination of the VE; that issue is discussed above. In Objection VII, Claimant requested a supplemental hearing, but by issuing the decision without granting a supplemental hearing, the ALJ necessarily overruled that objection. *See Brault*, 683 F.3d at 448.

Claimant also contends that she submitted supplemental evidence that conflicts with the VE's testimony—a report prepared by Paula Santagati, a vocational rehabilitation counselor. Pl.'s Mem. [DE-20] at 14. The report is not specific to Claimant's case; it does not mention her impairments, her work history, or even her name. (R. 311–312). Instead, the report speaks in general terms about interaction with coworkers and supervisors, and it describes the training necessary to work at CVS, Shaw's Supermarket, Healthcare Services, Gillette, Merry Maids, and Benchmark Senior Living, none of which were identified by the VE as jobs that Claimant can perform. *Id.* It is unclear how Ms. Santagati's report conflicts with the VE's testimony in this case, and other courts have similarly held that identical reports prepared by Ms. Santagati were too vague to be conflicting opinions meriting discussion by the ALJ. *Kidd v. Berryhill*, No. 5:17-CV-420-REW, 2018 WL 3040894, at *4 (E.D. Ky. June 19, 2018) (holding that "Santagati said utterly nothing specific about Kidd's life, health, ability to work, or case," the report existed at the time of the hearing but Claimant did not cross-examine the VE about it, and "[t]he ALJ had no duty to convene a second hearing to pepper the VE with questions that Kidd could have raised initially" regarding Ms. Santagati's report); *Slone v. Berryhill*, No. 1:17-CV-452-SLC, 2018 WL 5729591, at *4 (N.D. Ind. Nov. 1, 2018) ("Ms. Santagati's opinion is not specific to Slone, does not mention her by name, was drafted almost a year before the hearing, and appears to be a form opinion to be used in all cases where any plaintiff has this type of limitation.") (quotations omitted) (collecting cases); *Looney*, 2018 WL 3826778, at *12 ("Several courts have received reports from Santagati

11

containing identical testimony regarding work-preclusive social limitations, and have rejected the testimony for its lack of specificity, expertise and knowledge of the case in question") (collecting cases). Accordingly, the ALJ did not err in failing to discuss Ms. Santagati's generic report or in failing to order a supplemental hearing.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-19] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-25] is ALLOWED, and Defendant's final decision is affirmed.

Submitted, this the __1__ day of August, 2019.

Robert B. Jones, Jr.
United States Magistrate Judge